Chicago Title and Trust Company, Appellant, v. John Maruszczak et al., Appellees.

Gen. No. 40,233.

Opinion filed January 11, 1939.

Isidore Brown and Gilbert Nelson, both of Chicago, for appellant.

Wachowski & Wachowski and John H. Lyk, both of Chicago, for appellees; Casimir R. Wachowski and Michael Siemanski, of Chicago, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

Plaintiff brings this appeal from an order entered in the circuit court on March 2, 1938, granting to John Maruszczak and Tillie Maruszczak, his wife, the prayer of their petition, changing the provisions of a decree of foreclosure entered on June 1, 1933 as to the amount of attorneys' fees allowed to plaintiff, from $2,500 to $500. Said petition also asked the court to find compensation for the trustees and to reduce other costs and expenses and ordering the decree satisfied in open court, which requests the court granted. The court refused plaintiff the right to file an answer to said petition.

A part of the original decree of foreclosure which was entered June 1, 1933, reads as follows:

"(11) That the said complainant was necessarily required to engage the solicitors to institute and conduct these proceedings, and did engage such solicitors; that the usual, customary and reasonable fee for the services of complainant's solicitors herein is the sum of $2,500.00; that under and in accordance with the terms of said trust deed, said complainant, as Trustee, has a lien upon said premises for said sum of $2,500.00 prior and superior to the lien of the indebtedness secured by said bonds."

Apparently, nothing further was done regarding the foreclosure until January 15, 1938, when the master in chancery who was directed to execute the decree filed his report of sale with the clerk of the circuit court, wherein he stated that pursuant to the provisions of the decree he did on September 29, 1933, sell the premises to one Nick Pilot for $8,000; that he executed a certificate of sale to be delivered to Nick Pilot and filed a duplicate with the recorder of deeds; that he received no cash nor was there produced for credit the evidence

of indebtedness secured by the trust deed being foreclosed herein.

It further appears that on January 15, 1938, plaintiff filed its petition setting forth that a sale of the premises was made to Nick Pilot for $8,000; that it is informed and so believes that no money was put up at said sale; that it made frequent and repeated demands upon Nick Pilot to deposit the money but that he has failed to do so; that so far as petitioner can ascertain Nick Pilot does not have sufficient funds to make good his bid and prays that sale to Nick Pilot be set aside.

It further appears that on March 1, 1938, defendants John Maruszczak and Tillie Maruszczak presented their petition wherein it was stated that they are the owners of the equity of redemption and the owners of the entire indebtedness secured by the trust deed sought to be foreclosed; that the trust deed secured various bonds maturing at different dates; that at the time of the institution of the foreclosure they had all interest paid to date and that one of the attorneys for plaintiff obtained the bonds upon which foreclosure was instituted by questionable means; that in said foreclosure matter nothing was done from June 28, 1933, down to the present date; that petitioners have diligently striven to meet their said obligation and have through the greatest effort and hardship managed to acquire all of the outstanding bonds of the entire issue aggregating $30,000; that the necessity for sale herein has vanished and that these petitioners have made satisfactory arrangements herein with the Chicago Title and Trust Company for its trustee's fees and with the master in chancery for his fees; that the services proved up before the master and referred to in the decree of foreclosure were services for work performed and in view of the fact that it is not necessary for the said attorneys to complete their said foreclosure because of the acquisition by these defendants of all the bonds herein,

that the compensation allowed for work not performed should be deducted from the amount of fees allowed herein, and that in order to complete this foreclosure proceeding, it would be necessary for said attorneys to attend the master's sale and examine the master's report of sale and distribution and prepare a decree in conformity therewith, to see to the payment of the sums of money paid by the master to the Chicago Title and Trust Company, as trustee, and to see to the proper payment by said trustee to the owners and holders of the bonds herein, which services the lawyer for plaintiff, Gilbert Nelson, testified, were the services to be completed by him. The petitioners prayed in the alternative, among other things, as follows:

''(b)   That this Court permit these Petitioners to introduce evidence of the value of the services not performed by the said attorneys, Gilbert Nelson and Isidore Brown and to allow these Petitioners credit therefor.''

On March 2, 1938, without any witnesses having been sworn or evidence offered and against the objection of petitioner and without ruling on said petition, the court entered the following order:

''2.   That the purpose for which the decree of June 1, 1933, was entered has ceased and that the Court has jurisdiction herein to determine the sum to be paid at this time to the Trustee for and on account of its attorneys' fees.

''3.   The Court further finds that the said attorneys for plaintiff did not take any action herein from June 28, 1933 to January, 1938, and that their conduct in this respect was a gross neglect of their duties to the bondholders herein and to the Court.

''4.   The Court further finds that adequate compensation for the said Trustee for its said attorneys' fees is the sum of Five Hundred ($500.00) Dollars.

''7.   The Court further finds that the indebtedness secured by the trust deed sought to be foreclosed on

herein has been fully paid, and that all costs of this proceedings have been paid or legally tendered to the parties entitled thereto.

"It Is Therefore Ordered, Adjudged and Decreed that the said decree of foreclosure heretofore entered herein on June 1, 1933, be and the same is hereby satisfied in open Court."

The record shows that the plaintiff in this case desired to answer the petition of the defendants, but was not permitted to do so. No witnesses were sworn nor was any evidence introduced upon which these findings were based. Just how the trial court arrived at its conclusion we are unable to perceive.

The orderly way in which a court may arrive at a conclusion is by first having pleadings filed and, if an issue is made by same, permit the introduction of evidence, if necessary, in support of the contention of each side thereto. The court may then make its conclusion after considering the pleadings and the evidence submitted in relation thereto.

It is contended by the plaintiff that the decree of foreclosure was a final decree and that nothing could have been done by the trial court in connection therewith after the expiration of the term and cites in support thereof the case of *Tosetti Brewing Co. v. Koehler*, 200 Ill. 369, wherein the court said at page 373: "A decree cannot be vacated or amended at a subsequent term on motion or petition for the purpose of correcting an alleged error which involves the merits of the case. (5 Ency. of Pl. & Pr. 1049.) The proper method of impeaching and setting aside a decree after the term is to file an original bill in the nature of a bill of review, when such decree may be set aside, reversed or modified, according to the equities of the parties."

In the instant case under the circumstances as disclosed by the record, it apparently was impossible to sell the property. In the case of *First Nat. Bank v. Bryn Mawr Beach Bldg. Corp.*, 365 Ill. 409, the Su-

preme Court in referring to the case of *Totten v. Totten*, 299 Ill. 43, wherein an application was made for an extension of time for payment of the sum to redeem from a mortgage which had been foreclosed and on which sale had been had, the extension was granted and the power of the court to do so was questioned, the court at page 421, said: "The rule that a court does not have power, after the expiration of the term, to amend the principles of its final decree was there recognized, but it was held that a court of equity does retain and possess the power to control the time and manner of the execution of its judgments and decrees.

"The above and similar cases, though not deciding the question here, evidence a recognition by this court that rules of equity jurisdiction have developed and are developing, and that judicial proceedings must be adjusted to facts as they are. All who are conversant with the history of equity jurisprudence know that as a distinct system it has been of constant growth and development from its inception, covering a period of hundreds of years. 'The jurisdiction of a court of equity does not depend upon the mere accident whether the court has, in some previous case or at some distant period of time, granted relief under similar circumstances, but rather upon the necessities of mankind, and the great principles of natural justice, which are recognized by the courts as a part of the law of the land, and which are applicable alike to all conditions of society, all ages, and all people.' " And in the same opinion the court at page 417, said: "Equity jurisdiction of foreclosure proceedings is, however, general and not statutory or special. . . . It would seem that since equity courts have always exercised jurisdiction to decree the enforcement of mortgage liens and to supervise foreclosure sales, such jurisdiction need not expire merely because the questions or conditions surrounding the exercise of such time-honored functions

are new or complicated. If it may reasonably be seen that the exercise of the jurisdiction of a court of equity beyond the sale of the property will result in better protection to parties before it, it would seem not only to be germane to matters of undisputed jurisdiction, but to make for the highest exercise of the court's admitted functions.''

So, in the instant case, the plaintiff could only realize the fulfillment of the provisions of the decree by selling the property and they had been unable to consummate a sale. In the meantime, as alleged by defendant, the debt represented by the bond issue had been paid,—that is the maker of the paper had acquired the bonds.

We think on the authority of the above quoted case, the trial court had jurisdiction to entertain the motion, but should have permitted all parties to be heard after proper pleadings and issues had been made.

For the reasons herein given the order of the circuit court is reversed and the cause is remanded with directions to first permit the parties, if they so desire, to make up an issue by their pleadings, hear the evidence offered and then decide the matter by entering such order as in the court's opinion the law and evidence demand.

*Order reversed and cause remanded with directions.*

HALL, P. J., and HEBEL, J., concur.