(No. 36894.—)

JOSEPHINE M. SHUCK, Appellant, *vs.* GUARANTEE BANK AND TRUST COMPANY, Trustee, *et al.*, Appellees.

*Opinion filed June 6, 1962.—Rehearing denied November 29, 1962.*

SIDNEY S. DEUTSCH, of Rock Island, for appellant.

LONG, JACKSON & GENDE, of East Moline, and ALLAN L. BLAIR, of Chicago, (JOHN J. O'BRIEN, and DURWOOD J. LONG, of counsel,) for appellees.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

This case presents the question of the effect of section 255 of the Revenue Act, herein called the Reconveyance Act, (Ill. Rev. Stat. 1959, chap. 120, par. 736) upon tax deeds issued pursuant to tax sales held subsequent to September 1, 1951, and prior to the 1959 amendment to said act.

The real estate involved was duly sold for nonpayment of 1952 general real-estate taxes on October 22, 1953, to Interstate Bond Company, which thereafter paid the 1953, 1954 and 1955 real-estate taxes and served the notices re-

quired by law. On May 22, 1956, the county court of Rock Island County entered an order directing the issuance of a tax deed to Interstate, which deed was duly issued on June 1, 1956. By mesne conveyance, the title conveyed by the tax deed was vested in defendant Guarantee Bank and Trust Company.

On April 20, 1961, plaintiff filed a petition for reconveyance of said real estate pursuant to the Reconveyance Act, as it existed in 1955, (Ill. Rev. Stat. 1955, chap. 120, par. 736) on the ground that neither defendant nor its predecessors in title had taken possession of the premises within one year and that they had permitted the premises to be forfeited for taxes before the payment of taxes by them for seven years.

Defendant's motion to dismiss the petition was granted, and judgment was entered for the defendant. Plaintiff brings her appeal from this order directly to this court on the ground that a freehold and the construction of the constitution of Illinois are involved.

Plaintiff contends that she was entitled to a reconveyance under the Reconveyance Act in force at the time of the original tax sale, and that subsequent amendments to the act cannot constitutionally affect her right to a reconveyance. Defendant, however, maintains that the Reconveyance Act was repealed by implication in 1951 by amendments to the Revenue Act. They further insist that the 1959 amendment to the Reconveyance Act is valid and limits said act to deeds issued pursuant to tax sales held prior to September 1, 1951.

An understanding of the issues requires an analysis of the legislative history involved. From 1909 until 1959, the Reconveyance Act provided in substance as follows:

"Whenever the grantee of a tax deed to real estate, or any one claiming thereunder, shall not be in possession or occupation of said premises so claimed and shall not take or institute proceedings in good faith to take possession

within one year after the date of the first tax deed under his alleged tax title, or whenever the grantee of a tax deed to real estate or any one claiming thereunder shall suffer the same to be forfeited to the State or again sold for taxes or special assessments before he has completed the payment of all taxes and special assessments legally assessed thereon for seven consecutive years, then it shall be lawful for the owner of said real estate or his agent or attorney to pay or tender said tax title holder the amount of moneys paid out and expended by said tax title holder upon said sale with seven per cent (7%) interest per annum thereon, together with subsequent taxes and special assessments paid and the statutory fees and costs incurred, and that upon such payment or tender the said tax title holder shall reconvey the premises aforesaid to the owner thereof." Ill. Rev. Stat. 1955, chap. 120, par. 736.

In 1959 the Reconveyance Act was specifically amended to make it applicable only to tax deeds issued pursuant to tax sales "held on or prior to September 1, 1951." Ill. Rev. Stat. 1959, chap. 120, par. 736.

While the provisions of the Reconveyance Act remained substantially the same from 1909 to 1959, other sections of the Revenue Act relating to tax sales were basically amended in 1951. (Ill. Rev. Stat. 1951, chap. 120, pars. 734, 735, 744, 746, 747, 749, 750, 751.) The history and purpose of the 1951 amendments was fully explained in *Cherin* v. *The R. & C. Company,* 11 Ill.2d 447, 451, where we said:

"Prior to the amendment of 1951 the statutes contemplated that the county clerk should administratively determine the factual matters giving rise to the substantive rights of parties after an annual tax sale, namely the expiration of the period of redemption and the giving of statutory notices. Such determination was made by him from affidavits on file in his office and he issued tax deeds therefrom as the culmination of the annual tax sale involved. (Laws

of 1933, p. 923; *People* v. *Altman,* 9 Ill.2d 277.) Since this was not a judicial determination of facts, this court, on review, required the utmost in strict observance of form. No defect or omission in the affidavit filed with the clerk could be supplied, regardless of what the real facts might have been. (*Esker* v. *Heffernan,* 159 Ill. 38, 45; *Gage* v. *Mayer,* 117 Ill. 632, 638.) It was beyond the power of the court to determine from the evidence upon hearing whether the statutory conditions precedent had been met. (*Lawton* v. *Sweitzer,* 354 Ill. 620, 630.) Such exacting, technical procedure resulted in numerous defective titles and time-consuming litigation, and served to encumber rather than free land to once again enter the stream of commerce and bear its aliquot share of the tax burden.

"In the depression period following 1929, tax delinquencies increased to such extent that revenue for essential governmental functions was imperilled. In 1933 the General Assembly amended the Revenue Act of 1872 by adding section 253a, 253b, and 253c (Smith-Hurd Stat. 1933, chap. 120, pars. 238a, 238b and 238c) to provide a more drastic method of tax foreclosure. The right of redemption from such sale was governed by section 253. (Smith-Hurd Stat. 1933, chap. 120, par. 238.) In *Clark* v. *Zaleski,* 253 Ill. 63, decided in 1912, the procedure of filing petition in the tax foreclosure proceeding for supplemental decree for the issuance of a tax deed was approved, proof of requisite notice by affidavit discontinued, judicial determination of statutory compliance ordained, collateral attack thereof barred, except for lack of jurisdiction, and greater stability of title established. (*People* v. *Altman,* 9 Ill.2d 277; *Allen* v. *Nettleton,* 6 Ill.2d 141; Nichols, Illinois Civil Practice, vol. 7, sections 7479-7508 incl.) The legislature was mindful of these facts, of the decisions of this court and of the improved procedure in tax foreclosure proceedings when it amended the Revenue Act in 1951. It then assimilated the procedure with respect to the issu-

ance of deeds following annual tax sales to that used in tax foreclosure proceedings by requiring that the right to the issuance of a deed be determined by the county court instead of ·by the ministerial act of the county clerk and determined that: 'Tax deeds issued pursuant to this section shall be incontestable except by appeal from the order of the county court directing the county clerk to issue the tax deed.' Ill. Rev. Stat. 1955, chap. 120, par. 747.''

It is clear that prior to the salutary amendments of 1951, a tax deed obtained pursuant to an annual tax sale amounted to little more than color of title, which could become perfected only by virtue of section 6 of the Limitations' Act (Ill. Rev. Sat. 1959, chap. 83, par. 6), upon payment of taxes for seven years with possession of the premises. *Pickens* v. *Adams,* 7 Ill.2d 283, 290, 292.

Because of the tenuous nature of tax titles prior to the 1951 amendments, the Reconveyance Act served to enable titles to be cleared where a tax purchaser had failed to perfect his title pursuant to section 6 of the Limitations Act. In recognition of the desirability of merchantability, the Reconveyance Act provided an appropriate method of removing forfeited land from limbo and returning it to commerce. The efficacy of the amended Revenue Act in providing merchantable tax titles eliminated the need of a Reconveyance Act applicable to tax sales subsequent to the 1951 amendments.

While the Reconveyance Act served a beneficial purpose in clearing titles subject to pre-1951 tax sales, its continued applicability to post-1951 tax sales could only frustrate the legislative policy clearly established by the 1951 amendments. By these amendments the legislature ordained that the tax deeds issued pursuant to sales subsequent to September 1, 1951, "shall be incontestable except by appeal from the order of the county court directing the county clerk to issue the tax deed. This section shall be liberally construed so that tax deeds herein provided for shall convey

merchantable title." (Ill. Rev. Stat. 1951, chap. 120, par. 747.) As long as the Reconveyance Act granted the former owner a perpetual right to demand a reconveyance of title, limited only by the tax purchaser's perfection of title pursuant to the Limitations Act, the legislative desire to provide merchantable tax titles would remain an idle dream.

We are therefore of the opinion, from an examination of the appropriate statutes from a point of view of history, purpose, and the evils to be remedied, that the legislature in 1959 clearly intended that a petition under the Reconveyance Act should not be applicable to tax sales subsequent to September 1, 1951.

Having concluded that the legislature intended, by its 1959 amendment, that the Reconveyance Act should not be applicable to the present tax deed issued pursuant to a tax sale held on October 22, 1953, we turn to the question of the legislature's power to effectuate such an intention.

Plaintiff argues that the Reconveyance Act is a redemption statute, and that the redemption statute in force at the time of the sale creates "vested rights" of redemption which may not be destroyed by subsequent amendment.

It is clear that the former owners of the parcel in question retained the right to redeem the premises within two years of the tax sale as provided by statute (Ill. Rev. Stat. 1959, chap. 120, par. 734), and guaranteed by section 5 of article IX of the Illinois constitution. Even in the absence of our constitutional guaranty, such right of redemption is generally governed by the law in force at the time of the tax sale. (85 C.J.S., Taxation, sec. 842b.) This right of redemption occurs before the issuance of a tax deed, and the failure to redeem is a condition precedent to the issuance of the tax deed. (Ill. Rev. Stat. 1959, chap. 120, par. 747.) It is a right in the former owner over which he has complete control, regardless of any action by the tax purchaser. Since the right of redemption must expire prior to the issuance of the tax deed, it in no way impairs the merchantable

title created by tax deeds as provided in the 1951 amendments to the Revenue Act. Ill. Rev. Stat. 1951, chap. 120, par. 747.

The Reconveyance Act, on the other hand, while likened to redemption, (cf. *Pickens* v. *Adams,* 7 Ill.2d 283) actually established requirements for the tax purchaser in order to perfect his tax title. In explaining the effect of the Reconveyance Act, we said in *Woitynek* v. *Franken,* 300 Ill. 418, 420: "The appellee contends that under this statute a tax deed does not convey title if the grantee is not in possession or has not sued within a year to recover possession but merely stands as security for the amount advanced, with the penalty, interest and costs allowed by law. This is extending the statute much beyond its terms. A tax deed is effective at the time it is executed. If the proceedings have been regular it conveys the title in fee simple and the grantee may maintain ejectment for the possession of the premises. The fact that he does not acquire the possession within a year and does not institute proceedings for that purpose does not avoid his deed or deprive him of the title or the right to maintain an action for the possession, but the effect of such delay is that the owner of the real estate may compel reconveyance of the premises by paying the amount which the holder of the tax title has paid, with interest thereon, together with the subsequent tax and special assessments paid and statutory fees and costs."

Its purpose was not to create additional rights in the former owner, but to require the tax purchaser to make merchantable his title pursuant to section 6 of the Limitations Act. In a very real sense, the Reconveyance Act became an anomaly after the 1951 amendments to the Revenue Act provided for the merchantability of tax titles without resort to the Limitations Act.

It is our opinion that the purpose of the Reconveyance Act was to insure a method by which titles to real estate sold for taxes could be made merchantable even though the

tax purchaser failed to take the necessary steps to perfect his title. It was enacted for the purpose of returning real estate to the stream of commerce and not to give a special right or privilege to delinquent taxpayers. Although the statutory procedure established by the Reconveyance Act was incidentally beneficial to former owners, it was not designed for their protection as were the statutory and constitutional provisions for redemption within two years. We hold, therefore, that the Reconveyance Act, unlike the redemption statute, did not create any such vested, substantive or common-law right in plaintiff. From this conclusion, it follows that any former right or expectancy of plaintiff under the former Reconveyance Act was not protected against amendment, either by our statute on construction (Ill. Rev. Stat. 1959, chap. 131, par. 4; *Orlicki* v. *McCarthy*, 4 Ill.2d 342;) or the requirements of due process. (*People ex rel. Eitel* v. *Lindheimer*, 371 Ill. 367; *Sharp* v. *Sharp*, 213 Ill. 332.) We have examined the cases cited by plaintiff as authority to the contrary and find that they deal with the historic right of redemption after tax sale designed for the sole benefit of the owner, rather than a special statutory provision similar to the Illinois Reconveyance Act.

Lastly, plaintiff contends that the 1959 amendment making the Reconveyance Act applicable only to tax deeds issued pursuant to sales prior to September 1, 1951, is special legislation. We think our prior remarks concerning the history and purpose of the legislation, clearly show this to be a proper legislative classification.

We conclude, therefore, that the legislature intended that the 1959 amendment to the Reconveyance Act should have the effect of barring a petition for reconveyance of real estate sold for taxes subsequent to September 1, 1951, if the former owner had not previously perfected his rights under the former act. We further find no statutory or constitutional inhibition against the exercise of this intention,

considering the effect of the 1951 amendment making tax deeds incontestable except by appeal.

Because of the view we take of this case, it is unnecessary to consider whether the 1951 amendments to the Revenue Act repealed the Reconveyance Act by implication, or whether this plaintiff is barred from asserting any rights under the act.

On the basis of the foregoing conclusions, the county court of Rock Island County was correct in dismissing plaintiff's petition, and its judgment is affirmed.

*Judgment affirmed.*