JAMES M. CANTON, Plaintiff-Appellee, *v.* GEORGE CHORBAJIAN *et al.*, Defendants-Appellants.

Second District   Nos. 79-419, 79-421 cons.

Opinion filed September 24, 1980.

Hoogasian & Goshgarian, Ltd., of Waukegan (Jack Hoogasian and James K. Booras, of counsel), for appellants.

Overholser, Ray, Flannery & Glick, Ltd., of Libertyville, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

Defendants, George Chorbajian and Ann[1] Chorbajian, appeal from two judgments entered by the circuit court of Lake County: The first, dated May 24, 1979, dismissed with prejudice defendants' petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72); the second, dated June 5, 1979, granted judgment in favor of plaintiff, James M. Canton, for possession of certain premises described in his complaint for forcible entry and detainer.[2] The issue we address on appeal is whether the trial court abused its discretion in dismissing the section 72 petition.

The facts as alleged in the petition show that on February 19, 1974, the county clerk issued a certificate of sale of certain forfeited property commonly known as 611 Sumac Road, Highland Park, Illinois, to Howard Elridge. Elridge subsequently assigned his interest to James M. Canton, the plaintiff here. The county clerk granted two extensions of the statutory time for redemption to July 1, 1976, and to February 19, 1977.

On January 21, 1977, plaintiff filed a complaint in the circuit court seeking an equitable lien on the property in the amount of $4154.66. Plaintiff's complaint alleged, *inter alia*, that: He paid the sum of $2647.34 to the county collector in real estate taxes for the years 1973-1974; defendants had been notified twice of the purchase of the property, on May 10, 1976, and August 17, 1976; that on or about July 1, 1976, and thereafter, he had several conversations with defendants, wherein the defendants requested him to forbear from proceeding to acquire a tax deed in exchange for their promise to pay him the amount due and owing as of January 1977, *i.e.*, $4154.66; that based on defendants' requests to forbear, he twice extended the period for redemption on January 5, 1976, and on

---

[1] Mrs. Chorbajian's signature on various documents in the common law record shows her first name spelled as "Anne."

[2] The only serious dispute is whether the trial court abused its discretion in dismissing the section 72 petition. No issue is raised with respect to the trial court's action in the forcible detainer case and, therefore, it will not be discussed within the scope of this opinion. Plaintiff was granted possession of the premises after hearing on June 5, 1979, and execution of the judgment was stayed for six months.

May 10, 1976; that in reliance on defendants' promises of payment, he did not seek issuance of a tax deed and therefore lost his right to have a tax deed issued; and defendants have been unjustly enriched by his payment of the taxes.

If the dates set forth in the complaint are correct, the plaintiff did not speak with the defendants until about July 1, 1976 which was sometime after he had requested the two extensions of the redemption period; to-wit: on January 5 and May 10, 1976. Therefore, it is unlikely that plaintiff's requests for redemption extensions were made based on the defendants' requests that he forbear from proceeding to obtain a tax deed. The chronology would seem to support, however, the plaintiff's allegation that he did not petition for issuance of a tax deed in reliance upon the defendants' promises to redeem. But since the complaint was filed on January 21, 1977, and the second extended period of redemption did not expire until February 19, 1977, it appears the plaintiff had approximately one month's time remaining in which to petition for issuance of a tax deed pursuant to section 266 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 747). The time for complying with the notice provisions of section 266 had passed by the time plaintiff filed his complaint for an equitable lien, however, and although the last notice sent to defendants on August 17, 1976, pursuant to section 263 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 744) arguably could have sufficed as timely notice under section 266, it omitted the essential statutory element of the date when the period of redemption would expire and any tax deed issued would have been invalid. (See *Farlow v. Oliver* (1963), 29 Ill. 2d 493; *Dick v. Mitchell* (1968), 103 Ill. App. 2d 93.) Consequently, it appears plaintiff's reliance on defendants' promises to redeem had caused him, as alleged, to lose his right to a remedy at law; specifically, to have a tax deed issued.

Defendant George Chorbajian was personally served with summons and complaint on the evening of January 24, 1977. Defendants failed to file an answer or appear. Consequently the trial court entered an order of default and a default judgment on March 18, 1977. A judgment was entered on April 4, 1977, which provided, *inter alia*, that plaintiff was to have an equitable lien upon the real estate; that defendants were to pay plaintiff the sum of $4204.98 within 14 days; and that, in the event of defendants' failure to pay this sum within the time specified, the property would be advertised for public sale.

Pursuant to the April 4, 1977 judgment, the premises were advertised for sale by publication for three successive weeks in the Highland Park News. The premises were subsequently sold to plaintiff at a public auction for $4458.32. The proceeds from the sale were sufficient to pay the amount found to be due and owing under the April 4 judgment. Plaintiff

then filed a complaint for forcible entry and detainer on January 9, 1979, and summons was duly served on defendants on January 20, 1979. Defendants filed a motion to dismiss the complaint, which was denied on January 30, 1979.

■■ Defendants filed two petitions under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72). The first petition, filed on December 14, 1978, was dismissed on that same date. It is not clear from the record whether that dismissal was the result of an adjudication on the merits. It appears it was a dismissal due to a procedural error in notice, and no appeal was taken therefrom. In any case, the fact the defendants filed a second petition and supporting affidavit on February 2, 1979, and the plaintiff voluntarily participated in the proceedings relating thereto, was sufficient to revest the court with jurisdiction. *Spears v. Spears* (1977), 52 Ill. App. 3d 695.

The second petition sought relief from the March 18, 1977, judgment; the April 4, 1977, judgment; the September 16, 1977, judicial report of distribution and sale and the judgment and approval thereof. Defendants' petition alleged, *inter alia*, that they were at all times duly diligent and had a meritorious defense, namely, that the plaintiff as holder of the certificate did not obtain a tax deed within the time period prescribed by the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, pars. 734, 744, 747 and 765), and therefore that both the certificate of sale and the subsequent sale of the real estate are void. It likewise alleged that the defendants were ready and able to redeem the real estate. The petition further alleged that subsequent to the entry of the aforementioned judgments, plaintiff deliberately did not contact defendants, and that even though notice was published in a local newspaper, such notice was illegal and improper under the facts and circumstances of this case. Plaintiff filed a motion to dismiss the section 72 petition on March 1, 1979, setting forth his equitable lien theory in response to defendants' meritorious defense. After requesting *sua sponte* that the parties submit memoranda of law on the nature of an equitable lien as applicable to the facts of the instant case, the court found defendants' section 72 petition insufficient in that it did not allege a meritorious defense or due diligence. Accordingly, the court granted plaintiff's motion to dismiss on May 24, 1979. Defendants timely filed a notice of appeal on June 1, 1979.

The primary question raised by defendants in this appeal is whether the trial court erred in denying their section 72 petition when defendants were not notified of the entry of the default judgment, the judgment or the judgment approving the judicial sale. Defendants make several allegations in an attempt to demonstrate fraud and unconscionable behavior on the part of the plaintiff, the gist of which is that plaintiff secretly and

deliberately did not afford them notice of the default judgment and that they were completely unaware of all proceedings until the forcible entry and detainer action was filed against them more than a year later.

■■■ It is our view that this case is readily distinguishable from *Ellman v. De Ruiter* (1952), 412 Ill. 285, and *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, upon which defendants rely heavily as controlling here. As defendants contend, these cases stand for the proposition that a motion to vacate a default judgment under section 72 calls into effect the equitable powers of the court when the exercise of such power is necessary to prevent injustice. The court will exercise its equitable powers to grant relief, however, only when the facts and circumstances of the particular case call for it (*Mutual National Bank v. Kedzierski* (1968), 92 Ill. App. 2d 456.) In *Ellman*, plaintiffs' counsel willfully concealed the entry of a default judgment until such time as the court lost its power to vacate at the expiration of 30 days. The court there stated as follows:

> "While there was no duty on the attorney to notify defendant of the default judgments, fair dealing would require that he inform defendant of the defaults when the question arose instead of pursuing a course calculated to keep the defendant in ignorance until the time he could make a direct attack on the judgments had expired." 412 Ill. 285, 293.

*Elfman* involved a similar situation where execution of a default judgment was deliberately delayed for the purpose of keeping knowledge of the judgment from the defendant until the 30-day period had expired.

Our consideration of the record convinces us that no such circumstances are present here, notwithstanding defendants' conclusional allegations. There is no doubt the defendants were aware of the impending litigation before the default judgment was entered by virtue of the fact that Mr. Chorbajian was served personally with summons on January 24, 1977. Furthermore, defendants should have been aware of the judicial sale of their property following the entry of the default judgment decree inasmuch as public notice of such sale was given by publishing a notice for three successive weeks in the Highland Park News. The Highland Park News is a local newspaper of general circulation to which defendants could have easy access. Public notice is all that was required under these circumstances. In sum, there was no suggestion of fraud or unconscionable behavior on the plaintiff's part but, rather, it is apparent that the dismissal resulted from the defendants' failure to follow their case until the section 72 petition was filed.

The identical argument made by defendants in this case—that plaintiff failed to inform them of his intent to move for a default or its existence

once granted—was expressly rejected by the court in *Illinois Marine Towing Corp. v. Black* (1979), 74 Ill. App. 3d 909, 914, when it stated:

> "The plaintiffs were under no responsibility to provide the defendants with notice in either instance under the Civil Practice Act (citation), and, therefore, plaintiffs' silence could not be characterized as fraudulent. [Citations.]"

■■ Defendants further contend that a certain rule of practice adopted by the Nineteenth Judicial Circuit required notice of the entry of the default judgment. This rule may be summarized as requiring written notice after a hearing on all *ex parte* or emergency motions to all parties who have not been found by the court to be in default for failure to plead. Clearly this rule is inapplicable where, as here, defendants were personally served with summons prior to the entry of the default judgment and failed to appear.

■■ The next question to be addressed is whether the section 72 petition should have been allowed because it sets forth facts sufficient to show that the defendants are entitled to relief. It should be noted at the outset that this court has not been afforded a transcript of the section 72 hearing. Consequently, the scope of our review is limited to a consideration of whether the petition was substantially insufficient at law. Whether or not a section 72 petition should be granted lies within the sound discretion of the trial court, depending upon the facts and equities presented. (*David Plywood & Lumber Co. v. Sloan* (1977), 52 Ill. App. 3d 71.) As such, it will be disturbed on appeal only where the trial court has abused its discretion. *George F. Mueller & Sons, Inc. v. Ostrowski* (1974), 19 Ill. App. 3d 973.

It has been held that in order to establish a legally sufficient section 72 petition, a party must demonstrate (1) a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the trial court in the original action; (3) that through no fault of his own an error of fact was made or a defense or claim was not raised, and (4) due diligence in filing the section 72 petition. The petition must set forth sufficient actual allegations in support of each of these elements in order to prevail. *Mitchell v. Seidler* (1979), 68 Ill. App. 3d 478.

■■ It is first necessary to determine whether or not the defendants' petition totally fails to allege any facts upon which the trial court can find that reasonable diligence has been exercised by them. The petition must affirmatively set forth facts showing the exercise of due diligence in presenting both a defense to the lawsuit and a section 72 petition. (*Lammert v. Lammert Industries, Inc.* (1977), 46 Ill. App. 3d 667.) More specifically, the defendants must show that they acted diligently before the default order was entered and that under the circumstances they acted reason-

ably rather than negligently when they initially failed to prevent the entry of the default order, and that the entry of the default order was due to excusable mistake on their part. (*M.L.C. Corp. v. Pallas* (1978), 59 Ill. App. 3d 504.) A section 72 petition is not intended to relieve parties from the consequences of their own mistakes or negligence. *Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502.

■■ Our review of the record indicates that defendants allege in their petition that they have been duly diligent at all times. Defendants state in their affidavit in support of their section 72 petition that they attempted to communicate with plaintiff, without success. They also stated that inasmuch as Ann Chorbajian was an ill lady under medication and under the care of a physician at the time the complaint was filed, her inaction at the time was an excusable mistake. Moreover, defendants argue in their briefs that they acted as reasonable laymen, proceeding without counsel, in trying to resolve the matter without the added expense of going to court. We find defendants' allegations insufficient to demonstrate due diligence. Ultimate facts showing due diligence must be pleaded, not mere conclusions. (*Lamere v. Vaughn* (1975), 34 Ill. App. 3d 261.) The fact that Mrs. Chorbajian was ill at the time is inadequate to show that her failure to defend was the result of an excusable mistake. (*Cf. Lammert v. Lammert Industries, Inc.* (1977), 46 Ill. App. 3d 667; *Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304.) Finally, relief under section 72 will not be granted merely because defendants were untrained in the law and ignored the proceedings at their own initiative. *Hogan & Farwell, Inc. v. Meitz* (1976), 45 Ill. App. 3d 216.

■■ More importantly, the chronology of the litigation before us demonstrates lack of diligence on the part of defendants both before and after the entry of the default judgment. No facts are alleged to show that defendants were free from negligence in failing to appear or make timely objection to the sale. It is undisputed that the defendants were served with summons and complaint, and that defendants had constructive notice by publication of the sale. These circumstances indicate that defendants' dilemma is the result of their own negligence and attitude of non-response. Furthermore, defendants did not present sufficient facts to prove that they were diligent in filing their section 72 petitions. The first petition was filed on December 14, 1978, over 20 months after the entry of the judgment. After the petition was dismissed on that same day, defendants did not file the second petition until February 2, 1979, approximately 45 days later. This is not the diligence contemplated by section 72.

■■ We recognize that justice and good conscience may require that a default judgment be set aside to allow defendant a day in court even though there has been a lack of due diligence. (See *e.g, George F. Mueller & Sons, Inc. v. Ostrowski* (1974), 19 Ill. App. 3d 973.) Thus, in the interest

of fundamental fairness to the parties on both sides of a controversy, a court will examine all of the circumstances attendant upon entry of the default judgment. In this connection, the conduct of the party opposing a section 72 petition may be considered. (*Electrical Wholesalers, Inc. v. Silverstein* (1977), 47 Ill. App. 3d 689.) We therefore consider the conduct of the plaintiff, which is related in the instant case to the question of whether defendants have a meritorious defense. Defendants urge that they have presented a meritorious defense; namely, plaintiff's failure to seek an adequate remedy at law before causing defendants' property to be impressed with an equitable lien. More specifically, defendants argue that since plaintiff failed to obtain a tax deed as provided in section 266 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 747), he is precluded from any other remedy against defendants. Defendants rely heavily on section 271 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 752), which provides in pertinent part:

> "Unless the holder of the certificate for real estate purchased at any tax sale under this Act takes out the deed in the time provided by law, and files the same for record within one year from and after the time for redemption expires, the certificate or deed, and the sale on which it is based, shall, from and after the expiration of such one year, be absolutely null and void with no right to reimbursement. * * *"

Plaintiff concedes that the owner of a certificate of sale must obtain a deed within one year from the time the period for redemption expires and that the certificate becomes null and void thereafter. However, plaintiff counters defendants' contention by arguing that there is nothing in the Revenue Code which precludes the imposition of an equitable lien under the particular facts and circumstances present here; *i.e.*, defendants' requests that plaintiff forbear from obtaining a tax deed and promises to redeem the property, upon which plaintiff relied to his detriment. The critical inquiry thus becomes whether plaintiff's statutory right to obtain a tax deed was his sole and exclusive remedy against defendants. Such a determination is a difficult one, since our research indicates that this precise question has not been addressed by an Illinois court.

The principles governing equitable liens are adequately set forth in plaintiff's brief. (See, *e.g.*, *Aldrich v. R. J. Ederer Co.* (1922), 302 Ill. 391; *Calacurcio v. Levson* (1966), 68 Ill. App. 2d 260; 51 Am. Jur. 2d *Liens* §§32, 34 (1970).) Let it suffice to say that the doctrine of equitable liens has long been recognized in Illinois, although the tendency is to limit rather than extend the doctrine. *Pruitt Office Machines, Inc. v. Liberty National Bank* (1950), 341 Ill. App. 146.

Defendants rely on *Kelle v. Egan* (1912), 256 Ill. 45 and *Snow v. Glos* (1913), 258 Ill. 275, in support of their contention that no equitable right to

reimbursement exists when the holder of a certificate has not obtained a tax deed within the statutory time period. In *Kelle v. Egan*, the court stated:

> "The appellant was the holder of certain certificates of tax sales upon which the time for the execution of a deed had expired and the court did not require reimbursement of the amount of such sales. There was no equitable right to such reimbursement. [Citation.]." 256 Ill. 45, 46.

While research indicates that *Kelle v. Egan* has not been expressly overruled, the case is distinguishable on its facts. *Kelle* was an action to establish title under the Burnt Records Act and involved the construction of section 225 of the Revenue Act in effect at that time.

An analogy can be made, however, to cases where a subcontractor has sought to obtain an equitable lien against the owner of the premises absent compliance with the Mechanics' Liens Act. Illinois law is clear that absent compliance with the provisions of the appropriate liens' statute, a subcontractor has no right of action against the owner of property. (*Vanderlaan v. Berry Construction Co.* (1970), 119 Ill. App. 2d 142.) Further, the court in *Hill Behan Lumber Co. v. Marchese* (1971), 1 Ill. App. 3d 789, rejected a similar argument by a subcontractor, and reasoned this way:

> "We are unable to find any authority which would grant an equitable lien in a situation where it would have been appropriate to impose a mechanic's lien had there been compliance with the statute. Our research reveals that the sole remedy of subcontractor against the owner of premises is under the Mechanics' Liens Act. [Citations.]" 1 Ill. App. 3d 789, 792.

The court also held that a subcontractor was not entitled to an equitable lien on the grounds of unjust enrichment.

It is clear from the above that Illinois courts would not generally recognize an equitable right of action against the owner of property by an unpaid subcontractor absent compliance with the Mechanics' Liens Act. In the present case, a similar argument can be made by analogy that there is no authority to grant an equitable lien and that the sole remedy of a holder of a certificate against the owner of property is under the Revenue Act. However, cases in other jurisdictions have granted an equitable lien to a subcontractor where he failed to perfect his statutory lien. In *Crane Co. v. Fine* (Fla. 1969), 221 So. 2d 145, 149, the court stated:

> "Ordinarily, the only right or interest that such a materialman has in the funds payable under the direct contract by the owner—and, in the circumstances specified by the statute, in the property improved by his materials—arises out of the provisions of the Mechanic's Lien Law [citations]; and, in the absence of special or

peculiar equities, his failure to perfect his statutory right thereunder leaves him only his remedies at law. We emphasize that this opinion is not to be interpreted as holding that a materialman is entitled to seek an equitable lien merely because his materials are incorporated in the improvement. We hold only that, because of the special and peculiar equities shown by the record in this particular case, the plaintiff should not be foreclosed from seeking an equitable lien merely because he was entitled to but failed to perfect his statutory materialman's lien."

■■ In our view, a similar approach must be adopted in the case at bar. The record reveals that plaintiff failed to obtain a tax deed because he granted defendants' requests to forbear from obtaining such a deed, and relied to his detriment on their promises to redeem the property after having been afforded two extensions of time. We therefore find that, only because of the special and peculiar equities shown by the record in this case, plaintiff was not foreclosed from seeking an equitable lien for failing to obtain a tax deed within the requisite statutory period.

■■ Even assuming, *arguendo*, that defendants had a meritorious defense, they have not sufficiently alleged that they acted diligently in presenting such defense. In order to obtain relief under section 72, defendants must demonstrate, among other things, that through no fault of their own an error of fact was made or a defense or claim was not raised. (*Illinois Marine Towing Corp. v. Black* (1979), 74 Ill. App. 3d 909.) Defendants have not alleged that the facts surrounding the defense were newly discovered. To the contrary, the record indicates that such facts were known to the court when plaintiff's original complaint was filed, and defendants could have validly raised the defense in the original proceeding. We cannot conclude, therefore, that it was through no fault of their own that the defense was not raised in the prior proceedings.

Accordingly, we find defendants have not set forth sufficient factual allegations in support of the four elements necessary to prevail under section 72, and that the petition was properly dismissed.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

SEIDENFELD, P. J., and NASH, J., concur.