Marshall Savings and Loan Association, an Illinois Corporation, Plaintiff-Appellant, v. Chicago National Bank, etc., et al., Defendants-Appellees.
John D. Smith, Olive M. Smith, and Kerin Lee Smith, a Minor, by John D. Smith, Her Father and Next Friend, Plaintiffs, v. Leonard M. Gervasio and Leonard M. Gervasio & Co., Defendants.

Gen. No. 64–68.

Second District.

April 6, 1965.

McGrath & Liston, of Wheaton (Robert C. Liston, of counsel), for appellant.

Douglas F. Comstock and James P. Chapman, of Downers Grove, attorneys for John D. Smith and Olive M. Smith, appellees.

ABRAHAMSON, P. J.

This is an appeal from an order of the Circuit Court of DuPage County, wherein the chancellor, after entering a decree of foreclosure, further ordered on a

post-trial motion that the defendants Smiths had a prior equitable lien for certain monies expended by them prior to the execution of the mortgage foreclosed by Marshall Savings and Loan Association, plaintiff. Smiths executed a real estate sale contract with Leonard M. Gervasio on March 30, 1959, wherein Gervasio agreed to sell to Smiths a lot improved with a house, to be constructed in accordance with certain plans on which the parties had agreed. The purchase price was $28,390; $1,000 was paid on execution of the sale contract and the balance under the terms of the contract were to be paid as follows:

"5. (a) $25,000 from the proceeds of a first mortgage loan to be obtained by purchasers to be disbursed to the seller upon the signature of seller only and the presentation to the mortgage company of mechanic(s) lien waivers from subcontractors and material men.

(c) $2,390 to be paid to builder upon approval of loan."

This contract was not recorded until December 7, 1960. Title to the subject real estate was at the time of the execution of the real estate contract, and at all times thereafter, held by the Chicago National Bank as Trustee of Trust No. 13294, an Illinois Land Trust. The trustee was not a party to the March 30, 1959, contract.

On April 22, 1959, defendants Smiths paid to Gervasio an additional $1,000. On May 6, 1959, Smiths and Gervasio entered into certain Articles of Agreement for Warranty Deed, which agreement provided in part as follows:

"1. Receipt is hereby acknowledged of the sum of Three Thousand Three Hundred Ninety ($3,390) Dollars upon the execution of this contract, leaving

374

a principal balance due hereunder in the amount of $25,000. The principal balance of $25,000 shall be payable by the purchasers at the rate of $220 or more each and every month, the first payment of which shall commence on September 1, 1959, and shall be payable on the 1st day of each and every month thereafter until the balance of $25,000 is paid in full, except however as hereinafter modified and set forth in Paragraph 3 of this rider. The above balance shall bear interest at the rate of 6% per annum payable monthly on the whole sum remaining from time to time unpaid and that the payments of $220 shall be apportioned as follows: The first portion shall be first applied to interest, then $\frac{1}{12}$ of the general real estate taxes, of which $30 per month shall be used as an estimate for the 1959 taxes but shall be increased, if necessary, when the actual 1959 bills are received and shall be further increased, if necessary, from time to time when the bills are actually received; and $5 of which shall be used as an estimate for the insurance and the balance shall then be applied to the reduction of the principal and interest.

"3. It is further understood and agreed that all costs in connection with loan commissions to be paid by seller herein upon the making of the first mortgage loan on the property being conveyed herein shall be the sole and only obligation of the purchaser herein providing; however, that said loan charges shall not at any time exceed 3% of the amount of said first mortgage loan, and purchasers shall pay for all insurance and fire for extended coverage and for all title expenses. Purchasers shall, upon the oral or written demand of the seller herein, deposit said loan charges with the said lending agency within ten days after

375

such request is made. Upon the failure of the purchasers to do so, then this contract, shall at the option of the seller, become null and void and the earnest money deposit hereunder shall be retained by the seller as liquidated damages.

"It is further understood and agreed between the parties hereto that the entire balance due hereunder shall become due and payable on the first day following two years from the date of possession, and it shall then be the obligation of the purchaser to refinance said property or to assume the balance of the first mortgage obligation now on the premises with the specific understanding, however, that in the event the purchaser shall assume the balance due under said existing first mortgage that the seller shall be indemnified by purchasers in the event mortgage house does not permit a full and complete release on the part of seller under said mortgage."

On or about the date of the signing of this agreement, Smiths gave defendant Gervasio a check dated May 15, 1959, in the amount of $1,390, making a total payment as of that date of $3,390, the amount that the lower court has held to constitute a prior equitable lien. On July 9, 1959, the land trustee mortgaged the real estate in question to Marshall Savings and Loan Association. This mortgage was recorded on July 20, 1959. It was in the principal amount of $25,000 and provided for monthly payments of principal and interest of $162 commencing with the 5th day of March, 1960.

In October of 1959, prior to final completion of the residence which was being constructed, said residence was destroyed by fire. On June 7, 1961, the mortgagee, Marshall Savings and Loan Association, filed its complaint to foreclose the mortgage, joining as parties

defendants the Chicago National Bank, Trustee, Gervasio by virtue of whatever interest he may have in the real estate, and the Smiths by reason of their contract with Gervasio. The Smiths, who had sued Gervasio for the return of the payments made to him, moved to consolidate that action with the foreclosure proceeding because Gervasio appeared to be insolvent and immune to a money judgment. This motion was allowed.

It is plaintiff's theory that whatever rights the Smiths had against Gervasio by virtue of their contract with him, such rights would not attach as a lien on real estate owned by Chicago National Bank as Trustee; that plaintiff was entitled to rely on the record title of the mortgaged real estate, which gave no notice of the Smiths' interest, and, that there is not sufficient evidence in the record that they had any knowledge of the Smiths' interest. The plaintiff further contends that the Smiths, by virtue of their agreements with Gervasio concerning a first mortgage, expressly subordinated their interest in the real estate to the first mortgage.

Defendants contend that whether Gervasio's interest in the property was real or personal is immaterial, and that the equitable lien doctrine is merely a remedy with regard to the division of proceeds of sales and does not pretend to enforce an actual lien on any interest, real or personal. Defendants assert that there is substantial evidence to justify a finding by the trial judge that plaintiff had actual knowledge of defendants' interests. Defendants further deny that by agreements between them and Gervasio they expressly subordinated their rights to those of the mortgagee. There are further disputes concerning whether there was adequate evidence in the record to establish that Gervasio was in fact the beneficiary of the land trust.

377

■ For the reasons hereinafter set forth, we do not deem it necessary to determine whether or not Marshall had actual or constructive notice of defendants Smiths' agreements with Gervasio, nor whether the record contains sufficient evidence to establish Gervasio as beneficiary of the land trust, nor whether any such notice would have been controlling. We believe that the provisions quoted above from the agreements between Smiths and Gervasio dated March 30, 1959, and May 6, 1959, constitute an express subordination of Smiths' interests in the subject real estate to the interests of Marshall, which were created by the mortgage executed on July 9, 1959, with the Chicago National Bank as Trustee. Equitable liens have long been recognized in Illinois and enforced in proper situations. Webster v. Nichols, 104 Ill 160.

■ ■ The essential elements of equitable liens include (1) a debt, duty or obligation owing by one person to another. Watson v. Hobson, 401 Ill 191, 81 NE2d 885, and (2) a res to which that obligation fastens, which can be identified or described with reasonable certainty. Freeman v. Freeman, 314 Ill App 641, 42 NE2d 315; Hazenwinkle Grain Co. v. McComb, 116 Ill App 541. If the res to which the lien attaches is converted into money, the court in a proper case will treat the money as substituted for the property. Elgin Lumber Co. v. Langman and Utman, 23 Ill App 250, 25 ILP Liens, Sec 5.

■ Here, the obligation created by the agreements of March 30th and May 6th is between Gervasio and the Smiths. The res to which defendants Smiths attempt to attach their lien is the proceeds from the foreclosure sale of the subject property, title to which was at all times held by the Chicago National Bank as Trustee under a land trust. Gervasio, from whom the Smiths attempted to purchase the property, was a stranger to the title of the real estate involved and

was at best the beneficiary of the land trust. The Smiths had no dealings with the land trustee concerning this property. It is well established under the Illinois law that the beneficiary of a land trust can neither contract to sell the real estate nor accept an offer to purchase it. Schneider v. Pioneer Trust & Savings Bank, 26 Ill App2d 463, 168 NE2d 808; Chicago Federal Savings & Loan Ass'n v. Cacciatore, 33 Ill App2d 131, 178 NE2d 888. As pointed out in the Cacciatore case, supra, it has been repeatedly held in Illinois that a land trust beneficiary has no interest in the real estate and that claims, charges or liens created against such beneficiary are not encumbrances against the real estate. See Gallagher & Speck v. Chicago Title & Trust Co., 238 Ill App 39.

■ It is the tendency to limit rather than extend the doctrine of equitable liens. Pruitt Office Machines, Inc. v. Liberty Nat. Bank of Chicago, 341 Ill App 146, 93 NE2d 104.

■ We find that the beneficial interest of Gervasio in the land trust was not sufficient to permit the creation of an equitable lien against the property as a result of his contracts with the Smiths for purchase of said property. It follows then, that the Smiths, who could claim no lien on the property, could claim no lien against the proceeds of the foreclosure sale of the property.

For the foregoing reasons the order of the trial court of November 29, 1963, modifying the decree of foreclosure entered on July 5, 1963, to give the Smiths an equitable lien is reversed and the decree of foreclosure entered July 5, 1963, should be reinstated in its original form.

Reversed and remanded.

DAVIS and MORAN, JJ., concur.