*In re* APPLICATION OF TAZEWELL COUNTY COLLECTOR (The People *ex rel.* Russell Strauman, Tazewell County Treasurer and *Ex Officio* Collector of Taxes, Appellant, v. Robert Wagner, Appellee).

Third District   No. 3—83—0620

Opinion filed January 23, 1985.

G. Edward Orr, Assistant State's Attorney, of Pekin, for appellant.

J. M. Mathis, of Peoria, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

This appeal was brought on behalf of the People of the State of Illinois by Russell Strauman, county treasurer and *ex officio* collector of taxes of Tazewell County, following an order of the circuit court of Tazewell County providing for a refund of $1,174.40 to Robert Wagner, the purchaser of a tax sale certificate.

The sole issue presented by this appeal is whether the interest acquired by a tax purchaser is "substantially destroyed" within the meaning of section 260 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 741), when the owner of the residence subsequently removes the house from the property.

On October 27, 1980, Mr. Wagner purchased a number of real estate tax certificates in Tazewell County. Over the past few years, Mr. Wagner has purchased approximately 1,000 such tax certificates and is thoroughly familiar with the process.

One of the tax certificates (No. 815) concerned a lot with improve-

ments located at Lot 12 in Grandview Terrace estates. The parties are in agreement that upon the purchase of the tax sale certificate, Mr. Wagner acquired a lien against not only the land or real estate (Ill. Rev. Stat. 1981, ch. 120, par. 697), but the improvements on the real estate, whether they be "buildings, structures \*\*\* permanent fixtures \*\*\*." Ill. Rev. Stat. 1981, ch. 120, par. 482(13); see also *Jilek v. Chicago, Wilmington & Franklin Coal Co.* (1943), 382 Ill. 241, 47 N.E.2d 96.

Subsequent to the tax sale, on June 30, 1981, the owners of the property removed the residence from Lot 12 to Lot 16 in the same subdivision. Apparently the house which was removed is still in good condition and is occupied. Mr. Wagner did not learn of the removal of the residence until several months later.

Mr. Wagner filed an application for a refund on the basis that the improvements had been "substantially destroyed" by virtue of their removal and that a "sale in error" should be declared pursuant to section 260 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 741).

The circuit court granted Wagner's request for a refund on the ground that removal of the residence amounted to destruction of the property. The evidence, however, indicates that the residence was not destroyed by its removal but merely relocated to a different lot nearby.

■■■ A lien on property follows the property if moved, unless it is sold to an innocent purchaser, in which case the lien follows the proceeds of the sale. (*Marshall Savings & Loan Association v. Chicago National Bank* (1965), 56 Ill. App. 2d 372, 206 N.E.2d 117.) Since the improvement to the real estate was not "substantially destroyed," there was no sale in error, and Mr. Wagner was not entitled to a refund. The lien on the residence continues to exist in Mr. Wagner's favor, wherever that residence may be located.

For the foregoing reasons, the judgment of the circuit court of Tazewell County is reversed.

Judgment reversed.

BARRY, J., concurs.

JUSTICE STOUDER, dissenting:

I disagree with the majority because I believe the certificate holder should have been refunded the full amount of his payment after the removal of the house from Lot 12 because to do otherwise

would ultimately punish rather than protect the certificate holder. First, I disagree that the removal of the house does not constitute a substantial destruction of the improvements to Lot 12 and, even if it does not, section 260 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 741), which lists instances in which a "sale in error" shall be declared, is not an exclusive provision for refunds of tax sale proceeds. I believe the failure to refund the amount paid by the certificate holder in this case contravenes the strong public policy in favor of protecting the rights of certificate holders.

My reasons for believing that the removal of the house to a nearby lot "substantially destroyed" the improvements on Lot 12 are largely practical. Contrary to the assertion of the majority, the "lien" in favor of the certificate holder does not arise from section 216 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 697), but is one of judicial determination. (See *City of Chicago v. City Realty Exchange, Inc.* (1970), 127 Ill. App. 2d 185, 262 N.E.2d 230.) Not only is this so-called lien nonstatutory, but in the context in which it was discussed in *City of Chicago,* it merely provided a means of establishing the priority of the obligation when considered in light of a later demolition lien. In no case has this "lien" been used as the majority suggests it must in this case, nor is there any suggestion that the "lien" follows a building or other improvement removed from a real estate parcel which has been sold for delinquent taxes.

Relying upon this so-called "lien" on a house now located on another lot destroys any incentive for the title holder to redeem the real estate, which will ultimately discourage bidders from participating in tax sales whose objective most frequently is to earn interest and await redemption. Furthermore, the certificate holder is forced to postpone indefinitely the time when he/she will realize the full benefit after issuance of the tax deed, at which time he may attempt to replevy the house or recover a portion of the proceeds from the sale of the house, whatever the portion may be. This obviously creates a myriad of problems for the certificate holder and does nothing to further the public policy discussed by the Illinois Supreme Court in *Thornton Ltd. v. Rosewell* (1978), 72 Ill. 2d 399, 406-07, 381 N.E.2d 249, 253, which protects the rights of tax purchasers in the interest of the effective collection of revenue. Therefore, I would have held that the removal of the house to a nearby lot "substantially destroyed" the improvements on Lot 12.

But even if the removal of the house does not specifically meet a criterion listed in section 216 for a declaration of a "sale in error" as the Illinois Supreme Court stated in *Thornton,* the instances listed in

section 216 are not exclusive, and other situations not listed in the section may warrant the refund of the tax sale proceeds. In *Thornton,* the bidder had paid less than the amount of tax owed due to a clerical error. The supreme court held that the bidder was entitled to a refund despite the fact that section 216 does not pertain to this situation. I believe that, like *Thornton,* this is a situation where the successful bidder should receive a full refund, and to do otherwise would contravene public policy. I, therefore, would have affirmed the decision of the trial court ordering a refund.